IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |   |
|---|---|---|
| AHMED F. GAD | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No.: 18-03900 |
| NORTHAMPTON COUNTY, et al. | : | |
| Defendants. | : | |
|   | : | JURY TRIAL DEMANDED |

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendants, Northampton County, Classifications Coordinator John Harman, Correctional Officer John Colarusso, Correctional Officer Jonathon Glovas, Correctional Officer Jackie McNair and Correctional Officer Kyle Wene ("Defendants"), by and through their attorneys, MacMain, Connell & Leinhauser, LLC, respectfully submit this statement of relevant, material, undisputed facts as to which Defendants contend there is no genuine issue to be tried as follows:

1. Plaintiff brought the present § 1983 action alleging actions in violation of the First, Eighth, and Fourteenth Amendments (Count I and Count III) and a violation of the Religious Land Use and Institutionalized Persons Act (Count II). *See* Sec. Am. Compl. ECF No. 47.

2. Plaintiff was incarcerated at Northampton County Prison ("NCP") from June 6, 2017 until April 4, 2018. *See* Plaintiff's booking information, attached hereto as Exhibit A.

3. Plaintiff was sentenced on July 26, 2017 as a result of a criminal sentence imposed by Judge Paula A Roscioli. Ex. A; Pl.'s Court Commitment Documents, attached hereto as Exhibit B.

1

**Plaintiff's Interactions With Other Inmates**

4. Plaintiff was housed in NCP's general population on B-Tier on June 29, 2017. *See* NCP Incident Report dated June 29, 2017, attached hereto as Exhibit C; Plaintiff's housing movement history, attached hereto as Exhibit D; D.T. Gad, attached hereto as Exhibit E, at p. 61:13-16.

5. On June 29, 2017, Plaintiff was assaulted by another inmate. Ex. C; Ex. E, at p. 75:25-77:24; Plaintiff's request slip dated September 19, 2017, attached hereto as Exhibit F.

6. A "keep separate" order was instated between Plaintiff and the other inmate. Ex. C; Ex. F.

7. On July 21, 2017, Plaintiff was moved to G-Tier in general population due to an inmate/cell conflict on B-Tier. Ex. D; Ex. E, at pp. 61:13-16, 63:1-12.

8. Plaintiff was also removed from B-Tier because he was a constant issue. Ex. D.

9. On July 24, 2017, Plaintiff was moved to K-Tier in general population. Ex. D; Ex. E at p. 66:14-16.

10. On October 17, 2017, an inmate requested twenty-seven (27) requests slips for the inmates housed on K-Tier in general population. *See* NCP Incident Report dated October 17, 2017, attached hereto as Exhibit G.

11. The request slips were requested because the entire tier wanted Plaintiff removed from K-Tier. *Id.*

12. The other inmates accused Plaintiff of causing disturbances. *Id.*

13. Keeping Plaintiff on the tier would potentially cause a physical altercation in the near future due to other inmates' lack of patience with Plaintiff. *Id.*

14. From the start of his incarceration at NCP on June 6, 2017 until October 17, 2017, Plaintiff was housed in general population. Ex. D.

15. On October 17, 2017, Plaintiff was transferred to administrative segregation. Ex. D; Ex. E at pp. 83:9-85:12; *See* D.T. Harman, attached hereto as Exhibit H, at p. 10:3-12.

16. Plaintiff was placed on administrative segregation due to issues with other inmates. Ex. B; Ex. D; Ex. G; Ex. H at pp. 10:3-11:1, 18:6-19:20; NCP Incident Report dated November 17, 2017, attached hereto as Exhibit I.

17. Plaintiff acknowledges other inmates had problems with him. Ex. E at pp. 78:21-79:11, 81:4-8, 82:4-13, 85:13-86:23.

18. On November 17, 2017, Plaintiff requested to be put on protective custody due to issues with his cellmate. *Id.* at pp. 85:13-86:23: Ex. I.

19. On November 17, 2017, Plaintiff's cellmate was moved for interfering with Plaintiff's ability to practice his religion. Ex. E at pp. 85:13-86:23: Ex. I.

20. Plaintiff was placed on protective custody on November 21, 2017. Ex. D: Ex. H at p. 10:3-6.

21. On January 18, 2018, Plaintiff's cellmate asked to be moved due to a verbal altercation with Plaintiff. NCP Incident Report dated January 8, 2018, attached hereto as Exhibit J.

22. Classification Coordinator Harman made the decision to place Plaintiff in protective custody. Ex. E at p. 96:14-20; Ex. H at p. 10:3-17.

23. Officer Harman was concerned for Plaintiff's safety. Ex. H at pp. 10:3-11:1, 18:6-19:20; NCP Incident Report dated December 1, 2017, attached hereto as Exhibit K.

24. Prior to being placed in administrative segregation or protective custody Plaintiff was housed on three different tiers. Ex. D; Ex. E at p. 63:1-12; Ex. H at pp. 18:22-19:10.

25. The reason for each of Plaintiff's moves to a new tier was due to conflicts with inmates. Ex. C; Ex. D; Ex. E at pp. 75:25-77:24, 78:21-79:11, 81:4-8, 82:4-13, 85:13-86:23 85:13-86:23; Ex. G; Ex. H at pp. 18:22-19:10; Ex. I; Ex. K.

26. Plaintiff remained on protective custody due to friction between himself and other inmates. Ex. C; Ex. D; Ex. E at pp. 75:25-77:24, 78:21-79:11, 81:4-8, 82:4-13, 85:13-86:23 85:13-86:23; Ex. G; Ex. H at pp. 18:22-19:10; Ex. I; Ex. K.

27. Plaintiff remained on protective custody due to safety concerns regarding this friction. Ex. C; Ex. D; Ex. E at pp. 75:25-77:24, 78:21-79:11, 81:4-8, 82:4-13, 85:13-86:23 85:13-86:23; Ex. G; Ex. H at pp. 18:22-19:10; Ex. I; Ex. K.

## **Restrictive Housing Units and Protective Custody**

28. Inmates at NCP may be placed in the restrictive housing unit for the inmate's safety or if an inmate is, or has been, potentially dangerous to other inmates, staff, or himself. Ex. H at pp. 12:12-20, 18:6-15; NCP Policy regarding restrictive housing, attached hereto as Exhibit L; NCP Policy regarding inmate housing guidelines, attached hereto as Exhibit M; D.T. Colarusso, attached hereto as Exhibit N, at pp. 20:2-5, 21:8-3; D.T. Glovas, attached hereto as Exhibit O, at p. 12:1-11.

29. Inmates at NCP are placed in protective custody to provide secure, safe housing for those inmates who required a higher degree of supervision than inmates confined in general population. Ex. M; NCP Policy regarding proactive custody, attached hereto as Exhibit P.

30. Inmates may be placed in protective custody for their safety or the safety of other inmates. Ex. H at p. 8:19-24; Ex. N at pp. 20:2-5, 21:8-3; Ex. O at p. 12:1-11; Ex. P.

31. Inmates in protective custody are permitted to practice their religion and participate in programming. Ex. H at p. 19:20-25; Ex. N at p. 13:15-25; Ex. P; NCP Religious

Programming Policy, attached hereto as Exhibit Q; D.T. McNair, attached hereto as Exhibit R, at p. 8:9-23.

32. Inmates classified in the restrictive housing unit are permitted to participate in the religious services of their choosing. Ex. H at pp. 12:12-20, 19:20-25; Ex. L; Ex. N at p. 13:15-25; Ex. Q; Ex. R at p. 8:9-23.

33. Inmate requests for accommodations for religious practices are directed to the Chaplin. Ex. Q.

### Individual Defendants' Interactions with Plaintiff

34. Correctional Officer Colarusso worked on E-Tier while Plaintiff was housed in protective custody. Ex. N at pp. 10:23-11:13.

35. Correctional Officer Colarusso did not know why Plaintiff was placed on restrictive housing or in protective custody. *Id.* at pp. 11:22-12:17.

36. Correctional Officer Colarusso did not have knowledge of any grievances filed by Plaintiff regarding his ability to practice his religion, Officer Wene, or his cell condition. *Id.* at pp. 20:17-21:22.

37. Correctional Officer Colarusso did not turn off Plaintiff's cell lights, change the temperature of the cell, direct other inmates to tamper with Plaintiff's food, assault Plaintiff, or use derogatory language towards Plaintiff either verbally or by posting signs on his cell. *Id.* at pp. 16:21-17:12, 17:15-18:1; Ex. R.

38. Correctional Officer Colarusso did not take action against Plaintiff because of his religion. Ex. N at p. 17:13-14.

39. Correctional Officer Colarusso did not interfere with Plaintiff's ability to practice his religion. Ex. E at p. 98:9-13; Ex. N at pp. 15:24-18:1, 21:13-14.

40. Correctional Officer Glovas worked on E-Tier while Plaintiff was housed in protective custody. Ex. O at pp. 8:23-9:13.

41. Correctional Officer Glovas did not have knowledge of why Plaintiff was placed on restrictive housing or protective custody. *Id.* at p. 17:6-14.

42. Correctional Officer Glovas did not have knowledge of any grievances filed by Plaintiff regarding his ability to practice his religion, Officer Wene, or interference with his cell condition. *Id.* at pp. 15:12-14, 18:9-14.

43. Correctional Officer Glovas did not turn off Plaintiff's cell lights, change the temperature of the cell, direct other inmates to tamper with Plaintiff's food, assault Plaintiff, or use derogatory language towards Plaintiff either verbally or by posting signs on his cell. Ex. E at pp. 106-108; Ex. O at pp. 18:18-19:15.

44. Correctional Officer Glovas did not take action against Plaintiff because of his religion. Ex. E at pp. 106-108; Ex. O at p. 18:15-17.

45. Correctional Officer Glovas did not take any action against Plaintiff due to any grievances Plaintiff filed. Ex. O p. 18:9-14.

46. Correctional Officer Glovas did not permit another inmate to attack Plaintiff. Ex. E at pp. 105:15-106:12; Ex. O at pp. 11:12-21, 17:19-8, 18:15-17.

47. Correctional Officer McNair worked on E-Tier while Plaintiff was housed in protective custody. Ex. R at p. 9:2-23.

48. Correctional Officer McNair did not have knowledge of any grievances filed by Plaintiff regarding his ability to practice his religion, Officer Wene, or his cell condition. *Id.* at p. 16:21.

49.      Correctional Officer McNair did not turn off Plaintiff's cell lights. *Id.* at pp. 12:23-14:5.

50.      Correctional Officer McNair did not take action against Plaintiff because of his religion. *Id.* at pp. 12:20-14:5.

51.      Correctional Officer Wene did not work on E-Tier while Plaintiff was housed there. Ex. E at p. 108:18-23.

52.      Correctional Officer Wene did not turn off Plaintiff's cell lights, change the temperature of the cell, direct other inmates to tamper with Plaintiff's food, or use derogatory language towards Plaintiff either verbally or by posting signs on his cell while he was housed on E-Tier. *Id.*

53.      Correctional Officer Wene denies that he punched Plaintiff. Ex. K.

54.      Correctional Officer Wene did not break Plaintiff's ribs. Ex. K; Excerpts of Plaintiff's PrimeCare medical records, attached hereto as Exhibit S; Excerpts of Plaintiff's medical records from SCI Waymart, attached hereto as Exhibit T.

55.      Classification Coordinator Harman held his position while Plaintiff was housed in protective custody. Ex. H at p. 6:1-4.

56.      Classification Coordinator Harman did not have knowledge of any grievances filed by Plaintiff regarding his ability to practice his religion, Officer Wene, or his cell conditions. *Id.* at p. 21:7-25.

57.      Classification Coordinator Harman did not turn off Plaintiff's cell lights, change the temperature of the cell, direct other inmates to tamper with Plaintiff's food, assault Plaintiff, or use derogatory language towards Plaintiff either verbally or by posting signs on his cell. Ex. E at pp. 94-98; Ex. H at pp. 20:17-21:6.

58. Classification Coordinator Harman did not take action against Plaintiff because of his religion. Ex. H at p. 23:5-7.

59. Classification Coordinator Harman did not take any action against Plaintiff due to any grievances Plaintiff filed. *Id.* at p. 23:2-4.

60. Plaintiff was never prevented from bathing while housed on E-Tier. Ex. E at pp. 92:12-22, 160:3-10; Ex. N at pp. 16:7-13, 21:13-14; Ex. R at p. 17:3-14.

61. Plaintiff was able to pray while housed on E-Tier. Ex. E at pp. 92:16-22, 94-98, 171:14-16; Ex. H at p. 20:2-8; Ex. O at p. 16:7-13; Ex. R at p. 17:3-14.

62. Neither Correctional Officers McNair, Wene, Glovas, Colarusso, nor Classification Coordinator Harman prevented Plaintiff from washing in the sink in prior to prayer. Ex. E at pp. 94-98; Ex. H at p. 20:2-8; Ex. O at p. 16:7-13; Ex. R at p. 17:3-14.

63. Plaintiff was permitted to practice his religion on E-Tier. Ex. E at pp. 98:9-13, 106-108; Ex. H at p. 23:5-7; Ex. N at pp. 13:1-14-3; Ex. O at pp.10:20-11:3.

    Respectfully submitted,

Date: October 28, 2021

*/s/ David J. MacMain*
David J. MacMain (PA No. 59320)
Janelle E. Fulton (PA No. 80027)
MACMAIN, CONNELL & LEINHAUSER, LLC
433 West Market Street, Suite 200
West Chester, Pennsylvania 19382
(484) 318-7703
*Attorneys for Defendants Northampton County, Classifications Coordinator John Harman, and Correctional Officers John Colarusso, Jonathon Glovas, Kyle Wene, and Jackie McNair*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October 2021, I caused a true and correct copy of the foregoing to be served upon the following via the ECF system of the United States District Court for the Eastern District of Pennsylvania:

Patrick G. Geckle, Esquire
Patrick G. Geckle, LLC
1515 Market Street, Suite 1200
Philadelphia, PA 19102
*Attorney for Plaintiff*

Date: October 28, 2021

*/s/ David J. MacMain*
David J. MacMain (PA No. 59320)
Janelle E. Fulton (PA No. 80027)
MACMAIN, CONNELL & LEINHAUSER, LLC
433 West Market Street, Suite 200
West Chester, Pennsylvania 19382
(484) 318-7703
*Attorneys for Defendants Northampton County, Classifications Coordinator John Harman, and Correctional Officers John Colarusso, Jonathon Glovas, Kyle Wene, and Jackie McNair*