# EXHIBIT "H"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AHMED GAD,                          :
                                    :
                                    :  CIVIL ACTION
            Plaintiff               :  NO. 18-3900
                                    :
        vs.                         :
                                    :
NORTHAMPTON COUNTY,                 :
PENNSYLVANIA, et al.,               :
                                    :
            Defendants              :

CERTIFIED COPY

DEPOSITION OF JOHN HARMAN, JR.

        Held at the Northampton County Bar Association, located at 155 South Ninth Street, Easton, Pennsylvania, on Tuesday, September 17, 2019, commencing at 10:35 a.m., before Maureen L. Stewart, Registered Professional Reporter and Notary Public.

* * *

GALLAGHER REPORTING & VIDEO, LLC.
Mill Run Office Center
1275 Glenlivet Drive, Suite 100
Allentown, Pennsylvania  18106
(610) 439-0504/(800) 366-2980

[Page 2]

```
 1   APPEARANCES:
 2      PATRICK G. GECKLE, LLC
        BY:  PATRICK G. GECKLE, ESQUIRE
 3      1515 Market Street, Suite 1200
        Philadelphia, PA 19102
 4      pgeckle@pgglaw.com
        -- For the Plaintiff
 5
 6      THE MacMAIN LAW GROUP, LLC
        BY: SAMANTHA A. RYAN, ESQUIRE
 7      433 W. Market Street, Suite 200
        West Chester, PA 19382
 8      SRyan@macmainlaw.com
        -- For the Defendant
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

[Page 3]

```
 1              I N D E X
 2   THE WITNESS              PAGE
 3   JOHN HARMAN, JR.
 4      BY MR. GECKLE         4, 23
 5      BY MS. RYAN           18
 6
 7
 8
 9
10
11
12
              E X H I B I T S
13
14   MARKED      DESCRIPTION           PAGE
15   Harman 1    Investigative Narrative   15
16
17
18
19
20
21
22
23
24
25
```

[Page 4]

```
 1              (It is stipulated by and between
 2   Counsel for representative parties that the signing,
 3   sealing, filing and certification are hereby waived
 4   and that all objections of any nature, except as to
 5   the form of the question, are reserved until the time
 6   of trial.)
 7                      * * *
 8              JOHN HARMAN, JR., having been duly
 9   sworn, was examined and testified as follows:
10                      * * *
11              EXAMINATION BY MR. GECKLE
12                      * * *
13   BY MR. GECKLE:
14   Q.      Mr. Harman, for the record, sir, could you
15   give us your full name and your current business
16   address.
17   A.      My full name is John Raymond Harman, Jr.
18   My business address is 666 Walnut Street, Easton,
19   Pennsylvania 18042.
20   Q.      Mr. Harman, how are you employed, sir?
21   A.      I am a classification coordinator for
22   Northampton County Prison.
23   Q.      Mr. Harman, my name is Patrick Geckle.  I
24   am a lawyer and I was appointed by the court to
25   represent an inmate named Ahmed Gad in connection with
```

[Page 5]

```
 1   a lawsuit that's been started because of some
 2   complaints he has about his conditions of confinement
 3   at Northampton County Prison.
 4   A.      Okay.
 5   Q.      I have asked if you would be kind enough
 6   to come in today so that I can ask you some questions
 7   with regards to what you might know about his
 8   complaints.
 9   A.      Okay.
10   Q.      I will try to keep my voice up and try to
11   make my questions as clear as I can.  But if at any
12   time I ask you something this morning and you are not
13   sure you hear me or you are not sure you understand
14   what I am asking, just stop and tell me that and I'll
15   rephrase or repeat the question.
16   A.      Okay.
17   Q.      Keeping that ground rule in mind, whenever
18   I ask you something this morning and you answer me, I
19   am going to conclude that you heard me and you
20   understood me and you are answering me to the best of
21   your ability; okay?
22   A.      Okay.
23   Q.      How long have you been employed by
24   Northampton County?
25   A.      Since May of 1988.
```

[Page 6]

1   Q.    How many of those, I guess, over 20 years,
2   have you been a classification coordinator?
3   A.    I was classification coordinator now for,
4   I believe, seven years.
5   Q.    Prior to that, what were you doing for the
6   county?
7   A.    I was a classification specialist for
8   approximately three years.
9   Q.    And how about for, approximately, the
10  other ten years?
11  A.    Twenty years, corrections officer.
12  Q.    You were a CO for 20 years?
13  A.    Yes.
14  Q.    Did you have to take any kind of special
15  training in order to move or change from a corrections
16  officer to a classification specialist?
17  A.    No.
18  Q.    I mean, in general, I guess everybody kind
19  of knows what a classification specialist does, but
20  can you just tell me, more specifically, how someone
21  like yourself goes about determining how to classify
22  an inmate?
23  A.    A classification specialist, their typical
24  daily routine would be to gather the RAP sheets for
25  the new commitments that came in overnight. The way

[Page 7]

1   we classify is to read through their RAP sheets,
2   determine what their current charges are, what their
3   past convictions were for, whether they had prior
4   felony offenses, whether they had misconducts if they
5   had been to the prison before, substance abuse
6   history, so on and so forth and it breaks down into
7   numbers and that's how the classification is
8   determined between minimal, medium and maximal custody
9   levels. After that, every 45 days the inmates are
10  then reclassified to see if their classification would
11  change because their numbers change after the first
12  classification. So they have a chance to come down in
13  their classification level or if changes in their
14  charges have changed also.
15  Q.    So those are the three levels of
16  classification at Northampton: Minimum, medium, and
17  max?
18  A.    Correct. As far as custody levels, yes.
19  Q.    There is also different types of
20  segregation; right? There is administrative
21  segregation, disciplinary segregation and protective
22  custody?
23  A.    Correct.
24  Q.    As the classification coordinator, do you
25  make the decision with regards to an inmate placed

[Page 8]

1   into segregation?
2   A.    For disciplinary segregation, the inmate
3   would have a misconduct issued to them for some type
4   of infraction in the jail policy. For administration
5   segregation, there is a few different ways to get
6   placed on administrative segregation. Administrative
7   segregation is used for when someone is seen as not a
8   good, secure fit for the institution. They could
9   possibly be an assault risk to other inmates or they
10  could also be at risk to themselves, you know, getting
11  hurt from other inmates. We also -- administrative
12  segregation, I'll place someone on administrative
13  segregation if someone initially comes in on a
14  homicide charge just so we get a feel for the inmate
15  to see how the individual is going to interact within
16  the facility. And administrative segregation is
17  reviewed every 45 days, at the max.
18  Q.    And how about PC?
19  A.    PC, typically, an inmate would request to
20  be placed on protective custody, there is times where
21  the classification department will place someone on
22  protective custody just for their own safety. They
23  may not feel they may be at risk at that time, but
24  they could possibly be at risk.
25  Q.    Does anyone, other than the classification

[Page 9]

1   department, ever make the decision to place an inmate
2   on protective custody?
3   A.    At times, yes. There is correctional
4   staff -- the corrections officers or the corrections
5   lieutenant will place someone on protective custody.
6   Q.    They can do that on their own without
7   having to go through you?
8   A.    Well, it's a 24-hour seven day a week
9   process. So if we're not around, then, yes, they will
10  actually -- if we're not there, then, yes.
11  Q.    But if you are there?
12  A.    They are supposed to call the
13  classification department, yes.
14  Q.    And when someone is in protective custody,
15  Correction Officer Colarusso just told us they are
16  locked in their cell 23 hours a day. Would you have
17  any reason to disagree with that?
18  A.    I think, for the most part, that is the
19  policy. It was my understanding that they also get
20  one hour of rec and one hour of out-of-their-cell
21  time. That's my understanding.
22  Q.    So it might be 22 hours?
23  A.    It might be 22.
24  Q.    During your time as a classification
25  coordinator at Northampton County, have you become

[Page 10]

1  familiar with an inmate named Ahmed Gad?
2  A.      Yes.
3  Q.      Do you recall, sir, whether or not you
4  ever made a decision to place Gad in protective
5  custody?
6  A.      Yes.
7  Q.      Can you tell me why you made that
8  decision?
9  A.      **Originally, he was placed on**
10 **administrative segregation. Approximately 20 days**
11 **later, I changed his classification from**
12 **administrative segregation to protective custody.**
13 Q.      Do you recall why he was placed on
14 administrative segregation?
15 A.      **I was receiving multiple phone calls from**
16 **different units that Mr. Gad was residing on. He was**
17 **having issues with getting along with other inmates.**
18 Q.      Can you be any more specific about what
19 those issues involved?
20 A.      **To my recollection, his cellmates were**
21 **not -- they were not getting along. There was some**
22 **complaints of him not bathing properly.**
23 Q.      Anything else that you recall, other than
24 him not bathing properly?
25 A.      **I know that he was argumentative with**

[Page 11]

1  **other individuals, officers and inmates alike.**
2  Q.      When you get these kinds of requests from
3  an officer that there is a problem with an inmate, do
4  you do any kind of independent investigation into the
5  complaints?
6  A.      **I'll try to listen to phone calls. I'll**
7  **contact -- have the inmates brought down to my office,**
8  **question them, but basically I work off of what the**
9  **officer is reporting at the time.**
10 Q.      Do you recall ever bringing Gad to your
11 office to discuss the complaints with him?
12 A.      **I believe I did. I can't tell you when**
13 **that was.**
14 Q.      Do you recall what the substance of the
15 conversation was between you and he?
16 A.      **I would have asked him, you know, what the**
17 **issues were with the other inmates, why he couldn't**
18 **get along with other inmates.**
19 Q.      If I understand you -- I mean, you don't
20 have a specific recollection of any conversation with
21 him?
22 A.      No.
23 Q.      So I think the answer you just gave me
24 would have been that's the way it probably would have
25 gone if you had, had one?

[Page 12]

1  A.      Correct.
2  Q.      Do you recall any inmates ever complaining
3  about the way Gad was practicing his Muslim faith?
4  A.      No.
5  Q.      You mentioned one of the complaints that
6  you remember receiving is him not bathing properly and
7  he was argumentative; right?
8  A.      Correct.
9  Q.      Anything else that you can remember about
10 complaints concerning Inmate Gad?
11 A.      No.
12 Q.      Does the prison have any written policies
13 or procedures concerning the factors which go into
14 determining whether an inmate will be placed in
15 administrative segregation?
16 A.      **The written policy is if the**
17 **administration feels that the inmate is either a risk**
18 **to the general population or a risk to themselves or**
19 **they may have shown behavior that is to a negative to**
20 **the institution.**
21 Q.      And if such a concern is raised, is it
22 reduced to writing in some way, shape or form before
23 an inmate is placed into administrative segregation?
24 In other words, is a report written up saying we're
25 going to place inmate A in administrative segregation

[Page 13]

1  because? Is that ever reduced to writing?
2  A.      **At times, it is. It is not always done to**
3  **that extent.**
4  Q.      How about with regards to protective
5  custody, is there ever anything reduced to writing
6  with regards to the reason why a particular inmate is
7  being placed in protective custody?
8  A.      **Again, at times. I prefer it written. It**
9  **makes my job a lot easier. At times, it is not,**
10 **though.**
11 Q.      And you mentioned earlier that if someone
12 is placed in administrative segregation, it is
13 reviewed every 45 days?
14 A.      Correct.
15 Q.      How about inmates placed in protective
16 custody, is that also reviewed every 45 days?
17 A.      Yes.
18 Q.      And how is that review done?
19 A.      **At times, there are interviews with**
20 **inmates. At times, reports are read to see if there**
21 **has been any incidents since the initial placement.**
22          **For protective custody,**
23 **more or less, we'll speak to the inmate and ask**
24 **whether they still wish to remain on protective**
25 **custody.**

[Page 14]

1  Q. You said reports are read. What kind of
2  reports are read?
3  A. Incident reports, misconduct reports.
4  Q. The Philadelphia prison system has
5  something called Lock & Track. Does Northampton
6  County -- do you know what I mean by --
7  A. I am not familiar with that term.
8  Q. Basically, it is something that keeps
9  track of where an inmate is throughout their stay.
10 Does Northampton County have something like that, some
11 kind of document which reflects where an inmate is?
12 A. Well, we have a jailhouse management
13 system which would track their housing.
14 Q. Is that still available with regard to
15 Gad, the jailhouse management system?
16 A. Yes.
17 Q. When you do the reviews every 45 days,
18 after your review is completed, do you write up any
19 kind of report concerning what conclusions you came to
20 as a result of your review?
21 A. No.
22       MR. GECKLE: Can we get this marked
23 Harman 1?
24       (Whereupon, the Court Reporter
25 marked an exhibit as Harman 1.)

[Page 15]

1  BY MR. GECKLE:
2  Q. Let me show you a document, sir. It is
3  Bates-stamped on the bottom Northampton 2 and across
4  the top of Harman 1, it says, Investigative Narrative.
5  A. (Reviewing document.) Okay.
6  Q. That's an investigative report. It's my
7  understanding it was prepared by an Investigator
8  Horvath. Do you know Mr. Horvath?
9  A. Yes, I do.
10 Q. Who is Mr. Horvath?
11 A. He's the investigator for the prison,
12 internal.
13 Q. The page that I handed you, that is marked
14 Harman 1, there is six paragraphs. I want you to take
15 particular attention to Paragraph 4.
16 A. Okay.
17 Q. If you can just read that into the record,
18 Paragraph 4.
19 A. Inmate Gad questioned why he was in
20 protective custody, PC in parenthesis, when he did not
21 ask to be placed there. Classification Coordinator
22 John Harman happened to be walking by the interview
23 room and I caught his attention. He entered the room
24 and I advised him of Gad's PC concern. Harman related
25 that Gad's former cellmates in B2 and other housing

[Page 16]

1  units did not tolerate Gad's way of practicing his
2  Muslim religion, which caused friction. For Gad's
3  safety, Harman moved him. Gad asked that he be moved
4  back to B2 because he does not have access to
5  commissary or television where he is currently housed
6  in E-14 and he complained of the small dimensions of
7  his current cell. However, Harman was reluctant to do
8  so.
9  Q. Do you remember having a conversation like
10 that with Mr. Horvath?
11 A. I remember coming into the room that day,
12 yes.
13 Q. Do you remember telling Mr. Horvath that
14 Gad had been placed in PC because of complaints from
15 other inmates with regard to how he was practicing his
16 Muslim faith?
17 A. I don't recall stating about practicing
18 his Muslim religion, no.
19 Q. I don't know if you are the right one to
20 ask this of, but are you aware, is it the practice and
21 policy of Northampton County Prison to allow all
22 inmates to reasonably practice their faith?
23 A. Yes.
24 Q. And if they were being prevented from
25 doing that, then someone should try to intervene and

[Page 17]

1  make sure that inmate was allowed to properly practice
2  their faith?
3  A. Yes.
4  Q. Before coming in to testify today, did you
5  review any documents?
6  A. No.
7  Q. Did you look to see if there were any
8  written reports concerning Inmate Gad and any of his
9  complaints?
10 A. I believe about -- when we first received
11 the lawsuit, I did look through the folder. I don't
12 recall seeing any complaints about him not being able
13 to practice his religion.
14 Q. You said, when you looked through the
15 folder. Does every inmate have, more or less, their
16 own folder?
17 A. Yes.
18 Q. And that is still available with regards
19 to Gad?
20 A. Yes.
21       MR. GECKLE: That's all of the
22 questions I have for you, sir. I appreciate your time
23 and your patience.
24       THE WITNESS: Thank you.
25       MS. RYAN: I'm going to ask you a

[Page 18]

1  couple of follow-up questions.
2          * * *
3          EXAMINATION BY MS. RYAN
4          * * *
5  BY MS. RYAN:
6  Q.      You said that an inmate will be put into
7  protective custody if they were at risk to themselves.
8  What would make an inmate at risk to themselves?
9  A.      Not getting along with other inmates, it
10 could be the nature of their offenses, current
11 charges, I think that's pretty much it, you know,
12 unless the inmate is requesting protective custody.
13 Q.      You said that corrections officers can
14 make the decision to put somebody in protective
15 custody if you are not available?
16 A.      Yes.
17 Q.      Would you review that once you came in?
18 A.      Yes.
19 Q.      And if you disagreed with their
20 determination, could you override that?
21 A.      Yes.
22 Q.      Regarding Mr. Gad, you said you received
23 complaints. About how many complaints did you
24 receive?
25 A.      I believe there was at least five

[Page 19]

1  different times where I was called concerning him not
2  getting along with other inmates. They may have -- we
3  may have just moved him to a different room, not
4  particularly a different tier. I know he was moved
5  from two different tiers and then he ended up over on
6  the segregation unit.
7  Q.      So before making the decision to put him
8  into the administrative segregation unit, you tried
9  moving him elsewhere?
10 A.      Yes.
11 Q.      So the move you made into the
12 administrative segregation unit wasn't because of his
13 Muslim faith?
14 A.      No.
15 Q.      Was it because of the complaints you
16 received?
17 A.      It is because of the calls that I got from
18 the block officers stating that he was unable to get
19 along with his cellmates.
20 Q.      Is there anything in protective custody
21 that prevents an inmate from practicing their
22 religion?
23 A.      No.
24 Q.      Are inmates in protective custody able to
25 pray at any point in time that they would like?

[Page 20]

1  A.      Yes.
2  Q.      Are inmates in protective custody able to
3  wash up in their cell, if need be?
4  A.      Yes.
5  Q.      How are they able to do that?
6  A.      There is a sink in every room that has hot
7  and cold water. They have washcloths and they also
8  have towels and they should have soap.
9  Q.      Have you ever interacted with Mr. Gad
10 while he was in administrative segregation on the tier
11 itself?
12 A.      Yes.
13 Q.      What were those interactions like?
14 A.      They weren't very nice. He would
15 typically be hollering or screaming. He wasn't very
16 easy to talk to. He was always very excited.
17 Q.      Did you ever turn the lights off in his
18 cell?
19 A.      No.
20 Q.      Did you ever turn the temperature down in
21 his cell?
22 A.      No.
23 Q.      Did you ever post any signs on his cell
24 referring to Mr. Gad as a terrorist or other
25 derogatory terms?

[Page 21]

1  A.      No.
2  Q.      Did you ever instruct any inmates to
3  tamper with Mr. Gad's food?
4  A.      No.
5  Q.      Did you ever tamper with Mr. Gad's food?
6  A.      No.
7  Q.      Were you aware of any complaints by Mr.
8  Gad regarding any of those previous questions on those
9  topics?
10 A.      No. Not that I recall, no.
11 Q.      Are you aware if he wrote any grievances
12 regarding his cell being too cold or the lights being
13 off?
14 A.      No.
15 Q.      Are you aware if he filed any grievances
16 regarding inmates tampering with his food?
17 A.      No.
18 Q.      Are you aware of him filing any grievances
19 regarding any assaults by a correctional officer or an
20 inmate?
21 A.      No.
22          Can I just ask one question?
23 Q.      If you would like, we can step out.
24 A.      Yes. Can I ask a question?
25 Q.      Sure.

[Page 22]

1    (Whereupon, a break was taken.)
2  BY MS. RYAN:
3  Q.    It was more of a question about my
4  questions, to clarify what I meant by grievance. Was
5  a grievance the grievance procedure or complaints in
6  general was your basic question; correct?
7  A.    Correct.
8  Q.    So my question was referring to a formal
9  grievance with the prison itself.
10 A.    Correct.
11 Q.    Are you aware of any formal grievances
12 through the grievance system?
13 A.    No, I am not.
14 Q.    Are you aware of any other types of
15 complaints regarding those topics that Mr. Gad may
16 have raised?
17 A.    **I know that he had made complaints.**
18 **Whether they were written or verbal, I'm not privy to.**
19 **Just like Mr. Horvath being down in treatment to**
20 **interview him that one time, the only reason I knew**
21 **about it is because he was there and Mr. Horvath was**
22 **speaking to him.**
23 Q.    Are you aware of what the topic of those
24 complaints were -- the informal complaints, not
25 through the formal grievance procedure?

[Page 23]

1  A.    No.
2  Q.    Did you take any action against Mr. Gad in
3  response to any of those grievances or complaints?
4  A.    No.
5  Q.    Did you take any action regarding Mr. Gad
6  based upon his Muslim religion?
7  A.    No.
8         MS. RYAN: I have nothing further.
9              * * *
10        RE-EXAMINATION BY MR. GECKLE
11             * * *
12 BY MR. GECKLE:
13 Q.    Mr. Gad's folder, does that contain copies
14 of the grievances that he has filed while he was at
15 Northampton County or are they kept somewhere else?
16 A.    **I don't know the answer to that question.**
17 **I think I know, but I'm not 100 percent on that.**
18 Q.    She'll find out for me.
19        And these phone calls -- I think I
20 might have asked you this. But these phone calls you
21 received from various COs regarding complaints about
22 Mr. Gad, did you make any notes regarding those
23 conversations, write down anything?
24 A.    No, I didn't.
25 Q.    Or type anything up?

[Page 24]

1  A.    No.
2  Q.    You just, like, committed it to memory?
3  A.    Yes.
4         MR. GECKLE: Thank you, sir. That's
5  all I have.
6         MS. RYAN: I have no follow-up.
7         THE WITNESS: Thank you.
8         (Whereupon, the deposition concluded
9  at approximately 11:00 a.m.)

[Page 25]

9/27, 2019

I hereby certify that the evidence
and proceedings are contained fully and accurately in
the notes taken by me of the testimony of the within
witness who was duly sworn by me, and that this is a
correct transcript of the same.

*Maureen L. Stewart*
Maureen L. Stewart
Registered Professional Reporter
Notary Public

**A**
a.m 1:15 24:9
ability 5:21
able 17:12 19:24
  20:2,5
abuse 7:5
access 16:4
accurately 25:9
action 1:3 23:2,5
address 4:16,18
administration
  8:4 12:17
administrative
  7:20 8:6,6,11
  8:12,16 10:10
  10:12,14 12:15
  12:23,25 13:12
  19:8,12 20:10
advised 15:24
Ahmed 1:2 4:25
  10:1
al 1:6
alike 11:1
Allentown 1:24
allow 16:21
allowed 17:1
answer 5:18
  11:23 23:16
answering 5:20
APPEARAN...
  2:1
appointed 4:24
appreciate
  17:22
approximately
  6:8,9 10:10
  24:9
argumentative
  10:25 12:7
asked 5:5 11:16
  16:3 23:20
asking 5:14
assault 8:9
assaults 21:19
Association 1:13
attention 15:15
  15:23
available 14:14
  17:18 18:15

aware 16:20
  21:7,11,15,18
  22:11,14,23

**B**
B 3:12
B2 15:25 16:4
back 16:4
Bar 1:12
based 23:6
basic 22:6
basically 11:8
  14:8
Bates-stamped
  15:3
bathing 10:22
  10:24 12:6
behavior 12:19
believe 6:4
  11:12 17:10
  18:25
best 5:20
block 19:18
bottom 15:3
break 22:1
breaks 7:6
bringing 11:10
brought 11:7
business 4:15,18

**C**
call 9:12
called 14:5 19:1
calls 10:15 11:6
  19:17 23:19,20
caught 15:23
caused 16:2
cell 9:16 16:7
  20:3,18,21,23
  21:12
cellmates 10:20
  15:25 19:19
Center 1:23
certification 4:3
certify 25:8
chance 7:12
change 6:15
  7:11,11
changed 7:14
  10:11

changes 7:13
charge 8:14
charges 7:2,14
  18:11
Chester 2:7
CIVIL 1:3
clarify 22:4
classification
  4:21 6:2,3,7,16
  6:19,23 7:7,10
  7:12,13,16,24
  8:21,25 9:13
  9:24 10:11
  15:21
classify 6:21 7:1
clear 5:11
Colarusso 9:15
cold 20:7 21:12
come 5:6 7:12
comes 8:13
coming 16:11
  17:4
commencing
  1:15
commissary
  16:5
commitments
  6:25
committed 24:2
complained 16:6
complaining
  12:2
complaints 5:2,8
  10:22 11:5,11
  12:5,10 16:14
  17:9,12 18:23
  18:23 19:15
  21:7 22:5,15
  22:17,24,24
  23:3,21
completed 14:18
concern 12:21
  15:24
concerning
  12:10,13 14:19
  17:8 19:1
conclude 5:19
concluded 24:8
conclusions

  14:19
conditions 5:2
confinement 5:2
connection 4:25
contact 11:7
contain 23:13
contained 25:9
conversation
  11:15,20 16:9
conversations
  23:23
convictions 7:3
coordinator
  4:21 6:2,3 7:24
  9:25 15:21
copies 23:13
correct 7:18,23
  12:1,8 13:14
  22:6,7,10
  25:12
Correction 9:15
correctional 9:3
  21:19
corrections 6:11
  6:15 9:4,4
  18:13
COs 23:21
Counsel 4:2
county 1:6,12
  4:22 5:3,24 6:6
  9:25 14:6,10
  16:21 23:15
couple 18:1
court 1:1 4:24
  14:24
current 4:15 7:2
  16:7 18:10
currently 16:5
custody 7:8,18
  7:22 8:20,22
  9:2,5,14 10:5
  10:12 13:5,7
  13:16,22,25
  15:20 18:7,12
  18:15 19:20,24
  20:2

**D**
D 3:1

daily 6:24
day 9:8,16 16:11
days 7:9 8:17
  10:10 13:13,16
  14:17
decision 7:25
  9:1 10:4,8
  18:14 19:7
Defendant 2:8
Defendants 1:7
department
  8:21 9:1,13
deposition 1:10
  24:8
derogatory
  20:25
DESCRIPTI...
  3:14
determination
  18:20
determine 7:2
determined 7:8
determining
  6:21 12:14
different 7:19
  8:5 10:16 19:1
  19:3,4,5
dimensions 16:6
disagree 9:17
disagreed 18:19
disciplinary
  7:21 8:2
discuss 11:11
DISTRICT 1:1
  1:1
document 14:11
  15:2,5
documents 17:5
doing 6:5 16:25
Drive 1:24
duly 4:8 25:11

**E**
E 3:1,12
E-14 16:6
earlier 13:11
easier 13:9
EASTERN 1:1
Easton 1:13

| | | | | |
|---|---|---|---|---|
| 4:18 | fully 25:9 | **Harman** 1:10 | 19:2,24 20:2 | 23:16,17 |
| easy 20:16 | further 23:8 | 3:3,15 4:8,14 | 21:2,16 | knows 6:19 |
| either 12:17 | ——— **G** ——— | 4:17,20,23 | institution 8:8 | ——— **L** ——— |
| employed 4:20 | G 2:2,2 | 14:23,25 15:4 | 12:20 | L 1:15 25:18 |
| 5:23 | **Gad** 1:2 4:25 | 15:14,22,24 | instruct 21:2 | **LAW** 2:6 |
| ended 19:5 | 10:1,4,16 | 16:3,7 | interact 8:15 | lawsuit 5:1 |
| entered 15:23 | 11:10 12:3,10 | hear 5:13 | interacted 20:9 | 17:11 |
| **ESQUIRE** 2:2,6 | 14:15 15:19 | heard 5:19 | interactions | lawyer 4:24 |
| et 1:6 | 16:3,14 17:8 | **Held** 1:12 | 20:13 | level 7:13 |
| everybody 6:18 | 17:19 18:22 | history 7:6 | internal 15:12 | levels 7:9,15,18 |
| evidence 25:8 | 20:9,24 21:8 | hollering 20:15 | intervene 16:25 | lieutenant 9:5 |
| **EXAMINATI...** | 22:15 23:2,5 | homicide 8:14 | interview 15:22 | lights 20:17 |
| 4:11 18:3 | 23:22 | **Horvath** 15:8,8 | 22:20 | 21:12 |
| examined 4:9 | **Gad's** 15:24,25 | 15:10 16:10,13 | interviews 13:19 | listen 11:6 |
| excited 20:16 | 16:1,2 21:3,5 | 22:19,21 | investigation | **LLC** 1:23 2:2,6 |
| exhibit 14:25 | 23:13 | hot 20:6 | 11:4 | located 1:13 |
| extent 13:3 | **GALLAGHER** | hour 9:20,20 | investigative | **Lock** 14:5 |
| ——— **F** ——— | 1:23 | hours 9:16,22 | 3:15 15:4,6 | locked 9:16 |
| facility 8:16 | gather 6:24 | housed 16:5 | investigator | long 5:23 |
| factors 12:13 | **Geckle** 2:2,2 3:4 | housing 14:13 | 15:7,11 | look 17:7,11 |
| faith 12:3 16:16 | 4:11,13,23 | 15:25 | involved 10:19 | looked 17:14 |
| 16:22 17:2 | 14:22 15:1 | hurt 8:11 | issued 8:3 | lot 13:9 |
| 19:13 | 17:21 23:10,12 | ——— **I** ——— | issues 10:17,19 | ——— **M** ——— |
| familiar 10:1 | 24:4 | **Incident** 14:3 | 11:17 | **MacMAIN** 2:6 |
| 14:7 | general 6:18 | incidents 13:21 | ——— **J** ——— | making 19:7 |
| far 7:18 | 12:18 22:6 | independent | jail 8:4 | management |
| feel 8:14,23 | getting 8:10 | 11:4 | jailhouse 14:12 | 14:12,15 |
| feels 12:17 | 10:17,21 18:9 | individual 8:15 | 14:15 | marked 3:14 |
| felony 7:4 | 19:2 | individuals 11:1 | job 13:9 | 14:22,25 15:13 |
| filed 21:15 23:14 | give 4:15 | informal 22:24 | **John** 1:10 3:3 | **Market** 2:3,7 |
| filing 4:3 21:18 | **Glenlivet** 1:24 | infraction 8:4 | 4:8,17 15:22 | **Maureen** 1:15 |
| find 23:18 | go 9:7 12:13 | initial 13:21 | **Jr** 1:10 3:3 4:8 | 25:18 |
| first 7:11 17:10 | goes 6:21 | initially 8:13 | 4:17 | max 7:17 8:17 |
| fit 8:8 | going 5:19 8:15 | inmate 4:25 | ——— **K** ——— | maximal 7:8 |
| five 18:25 | 12:25 17:25 | 6:22 7:25 8:2 | keep 5:10 | mean 6:18 11:19 |
| folder 17:11,15 | good 8:8 | 8:14,19 9:1 | **Keeping** 5:17 | 14:6 |
| 17:16 23:13 | grievance 22:4,5 | 10:1 11:3 | keeps 14:8 | meant 22:4 |
| follow-up 18:1 | 22:5,9,12,25 | 12:10,14,17,23 | kept 23:15 | medium 7:8,16 |
| 24:6 | grievances | 12:25 13:6,23 | kind 5:5 6:14,18 | memory 24:2 |
| follows 4:9 | 21:11,15,18 | 14:9,11 15:19 | 11:4 14:1,11 | mentioned 12:5 |
| food 21:3,5,16 | 22:11 23:3,14 | 17:1,8,15 18:6 | 14:19 | 13:11 |
| form 4:5 12:22 | ground 5:17 | 18:8,12 19:21 | kinds 11:2 | **Mill** 1:23 |
| formal 22:8,11 | **GROUP** 2:6 | 21:20 | knew 22:20 | mind 5:17 |
| 22:25 | guess 6:1,18 | inmates 7:9 8:9 | know 5:7 8:10 | minimal 7:8 |
| former 15:25 | ——— **H** ——— | 8:11 10:17 | 10:25 11:16 | **Minimum** 7:16 |
| forth 7:6 | H 3:12 | 11:1,7,17,18 | 14:6 15:8 | misconduct 8:3 |
| friction 16:2 | handed 15:13 | 12:2 13:15,20 | 16:19 18:11 | 14:3 |
| full 4:15,17 | happened 15:22 | 16:15,22 18:9 | 19:4 22:17 | misconducts 7:4 |

morning 5:12,18
move 6:15 19:11
moved 16:3,3
    19:3,4
moving 19:9
multiple 10:15
Muslim 12:3
    16:2,16,18
    19:13 23:6

**N**
N 3:1
name 4:15,17,23
named 4:25 10:1
Narrative 3:15
    15:4
nature 4:4 18:10
need 20:3
negative 12:19
new 6:25
nice 20:14
Ninth 1:13
Northampton
    1:6,12 4:22 5:3
    5:24 7:16 9:25
    14:5,10 15:3
    16:21 23:15
Notary 1:16
    25:19
notes 23:22
    25:10
numbers 7:7,11

**O**
objections 4:4
offenses 7:4
    18:10
office 1:23 11:7
    11:11
officer 6:11,16
    9:15 11:3,9
    21:19
officers 9:4 11:1
    18:13 19:18
okay 5:4,9,16,21
    5:22 15:5,16
once 18:17
order 6:15
Originally 10:9
out-of-their-cell

9:20
overnight 6:25
override 18:20

**P**
PA 2:3,7
page 3:2,14
    15:13
Paragraph
    15:15,18
paragraphs
    15:14
parenthesis
    15:20
part 9:18
particular 13:6
    15:15
particularly
    19:4
parties 4:2
patience 17:23
Patrick 2:2,2
    4:23
PC 8:18,19
    15:20,24 16:14
Pennsylvania
    1:1,6,14,24
    4:19
percent 23:17
pgeckle@pggl...
    2:4
Philadelphia 2:3
    14:4
phone 10:15
    11:6 23:19,20
place 8:12,21
    9:1,5 10:4
    12:25
placed 7:25 8:6
    8:20 10:9,13
    12:14,23 13:7
    13:12,15 15:21
    16:14
placement 13:21
Plaintiff 1:4 2:4
point 19:25
policies 12:12
policy 8:4 9:19
    12:16 16:21

population
    12:18
possibly 8:9,24
post 20:23
practice 16:20
    16:22 17:1,13
practicing 12:3
    16:1,15,17
    19:21
pray 19:25
prefer 13:8
prepared 15:7
pretty 18:11
prevented 16:24
prevents 19:21
previous 21:8
prior 6:5 7:3
prison 4:22 5:3
    7:5 12:12 14:4
    15:11 16:21
    22:9
privy 22:18
probably 11:24
problem 11:3
procedure 22:5
    22:25
procedures
    12:13
proceedings
    25:9
process 9:9
Professional
    1:16 25:18
properly 10:22
    10:24 12:6
    17:1
protective 7:21
    8:20,22 9:2,5
    9:14 10:4,12
    13:4,7,15,22
    13:24 15:20
    18:7,12,14
    19:20,24 20:2
Public 1:16
    25:19
put 18:6,14 19:7

**Q**
question 4:5

5:15 11:8
    21:22,24 22:3
    22:6,8 23:16
questioned
    15:19
questions 5:6,11
    17:22 18:1
    21:8 22:4

**R**
raised 12:21
    22:16
RAP 6:24 7:1
Raymond 4:17
RE-EXAMIN...
    23:10
read 7:1 13:20
    14:1,2 15:17
reason 9:17 13:6
    22:20
reasonably
    16:22
rec 9:20
recall 10:3,13,23
    11:10,14 12:2
    16:17 17:12
    21:10
receive 18:24
received 17:10
    18:22 19:16
    23:21
receiving 10:15
    12:6
reclassified 7:10
recollection
    10:20 11:20
record 4:14
    15:17
reduced 12:22
    13:1,5
referring 20:24
    22:8
reflects 14:11
regard 14:14
    16:15
regarding 18:22
    21:8,12,16,19
    22:15 23:5,21
    23:22

regards 5:7 7:25
    13:4,6 17:18
Registered 1:16
    25:18
related 15:24
religion 16:2,18
    17:13 19:22
    23:6
reluctant 16:7
remain 13:24
remember 12:6
    12:9 16:9,11
    16:13
repeat 5:15
rephrase 5:15
report 12:24
    14:19 15:6
Reporter 1:16
    14:24 25:18
reporting 1:23
    11:9
reports 13:20
    14:1,2,3,3 17:8
represent 4:25
representative
    4:2
request 8:19
requesting
    18:12
requests 11:2
reserved 4:5
residing 10:16
response 23:3
result 14:20
review 13:18
    14:18,20 17:5
    18:17
reviewed 8:17
    13:13,16
Reviewing 15:5
reviews 14:17
right 7:20 12:7
    16:19
risk 8:9,10,23,24
    12:17,18 18:7
    18:8
room 15:23,23
    16:11 19:3
    20:6

routine 6:24
rule 5:17
Run 1:23
RYAN 2:6 3:5
    17:25 18:3,5
    22:2 23:8 24:6

**S**

S 3:12
safety 8:22 16:3
SAMANTHA
    2:6
saying 12:24
says 15:4
screaming 20:15
sealing 4:3
secure 8:8
see 7:10 8:15
    13:20 17:7
seeing 17:12
seen 8:7
segregation 7:20
    7:21,21 8:1,2,5
    8:6,7,12,13,16
    10:10,12,14
    12:15,23,25
    13:12 19:6,8
    19:12 20:10
September 1:14
seven 6:4 9:8
shape 12:22
She'll 23:18
sheets 6:24 7:1
show 15:2
shown 12:19
signing 4:2
signs 20:23
sink 20:6
sir 4:14,20 10:3
    15:2 17:22
    24:4
six 15:14
small 16:6
soap 20:8
somebody 18:14
South 1:13
speak 13:23
speaking 22:22
special 6:14

specialist 6:7,16
    6:19,23
specific 10:18
    11:20
specifically 6:20
SRyan@mac...
    2:8
staff 9:4
started 5:1
STATES 1:1
stating 16:17
    19:18
stay 14:9
step 21:23
Stewart 1:15
    25:18
stipulated 4:1
stop 5:14
Street 1:13 2:3,7
    4:18
substance 7:5
    11:14
Suite 1:24 2:3,7
supposed 9:12
sure 5:13,13
    17:1 21:25
sworn 4:9 25:11
system 14:4,13
    14:15 22:12

**T**

T 3:12
take 6:14 15:14
    23:2,5
taken 22:1 25:10
talk 20:16
tamper 21:3,5
tampering 21:16
television 16:5
tell 5:14 6:20
    10:7 11:12
telling 16:13
temperature
    20:20
ten 6:10
term 14:7
terms 20:25
terrorist 20:24
testified 4:9

testify 17:4
testimony 25:10
Thank 17:24
    24:4,7
think 9:18 11:23
    18:11 23:17,19
three 6:8 7:15
tier 19:4 20:10
tiers 19:5
time 4:5 5:12
    8:23 9:21,24
    11:9 17:22
    19:25 22:20
times 8:20 9:3
    13:2,8,9,19,20
    19:1
today 5:6 17:4
told 9:15
tolerate 16:1
top 15:4
topic 22:23
topics 21:9
    22:15
towels 20:8
track 14:5,9,13
training 6:15
transcript 25:12
treatment 22:19
trial 4:6
tried 19:8
try 5:10,10 11:6
    16:25
Tuesday 1:14
turn 20:17,20
Twenty 6:11
two 19:5
type 8:3 23:25
types 7:19 22:14
typical 6:23
typically 8:19
    20:15

**U**

unable 19:18
understand 5:13
    11:19
understanding
    9:19,21 15:7
understood 5:20

unit 19:6,8,12
UNITED 1:1
units 10:16 16:1

**V**

various 23:21
verbal 22:18
VIDEO 1:23
voice 5:10
vs 1:5

**W**

W 2:7
waived 4:3
walking 15:22
Walnut 4:18
want 15:14
wash 20:3
washcloths 20:7
wasn't 19:12
    20:15
water 20:7
way 6:25 11:24
    12:3,22 16:1
ways 8:5
we'll 13:23
we're 9:9,10
    12:24
week 9:8
weren't 20:14
West 2:7
wish 13:24
witness 3:2
    17:24 24:7
    25:11
words 12:24
work 11:8
write 14:18
    23:23
writing 12:22
    13:1,5
written 12:12,16
    12:24 13:8
    17:8 22:18
wrote 21:11

**X**

X 3:1,12

**Y**

years 6:1,4,8,10
    6:11,12

**Z**

**0**

**1**

1 3:15 14:23,25
    15:4,14
10:35 1:15
100 1:24 23:17
11:00 24:9
1200 2:3
1275 1:24
15 3:15
1515 2:3
155 1:13
17 1:14
18 3:5
18-3900 1:4
18042 4:19
18106 1:24
19102 2:3
19382 2:7
1988 5:25

**2**

2 15:3
20 6:1,12 10:10
200 2:7
2019 1:14 25:5
22 9:22,23
23 3:4 9:16
24-hour 9:8

**3**

366-2980 1:25

**4**

4 3:4 15:15,18
433 2:7
439-0504/(800)
    1:25
45 7:9 8:17
    13:13,16 14:17

**5**

**6**

610 1:25

**666** 4:18

666 4:18

## INVESTIGATIVE NARRATIVE

1. On December 19, 2017 Director Daniel Keen provide me with copies of two handwritten letters sent to the court administration office by Inmate Ahmed GAD, #24937. The letters were very similar and were dated December 7, 2017 and December 9, 2017. GAD alleged there was physical abuse and drug use occurring in the jail, among other things, and the misconduct was being allowed by the officers.

2. On December 20, 2017 at about 1143 hours, I interviewed Inmate GAD in a Treatment interview room. I introduced myself to GAD and told him why I was speaking with him. GAD claimed he had witnessed the following misconduct:

    - Officers passing kites to inmates
    - Inmates giving officers commissary
    - Officers allowing inmates to fight, which result in injuries to the inmates
    - Use of drugs and smoking of tobacco – "even in the hole"

3. I asked Inmate GAD for the names of the officers and inmates engaged in the aforementioned behavior, but he declined, claiming his treatment in the jail would be even worse. I asked GAD if he could provide specifics of the activity that he claimed, but he did not.

4. Inmate GAD questioned why he was in protective custody (PC) when he did not ask to be placed there. Classification Coordinator John Harman happened to be walking by the interview room and I caught his attention. He entered the room and I advised him of GAD'S PC concern. Harman related that GAD'S former cellmates in B2 and other housing units did not tolerate GAD'S way of practicing his Muslim religion, which caused friction. For GAD'S safety, Harman moved him. GAD asked that he be moved back to B2 because he does not have access to commissary or television where he is currently housed (E-14) and he complained of the small dimensions of his current cell, however, Harman was reluctant to do so.

5. According to Inmate GAD, Officer Kyle Wene recently punched him on the right side. GAD spoke with Lieutenant Jason Werley about the incident. Officer Lou Donatelli was present. It was determined that Wene had pushed GAD, who was refusing to move. No punch was thrown. The incident was documented.

6. This case will be considered closed at this time due to Inmate GAD'S complaints being unsubstantiated.



NCP Form No. NCP-025
Updated: September 12, 2017
Initials *AM*
Page 2 of 2